### 47599. FELDSCHNEIDER v. THE STATE.

EVANS, Judge. The defendant was tried and convicted of the offense of distributing obscene materials. He was sentenced to serve 12 months imprisonment at hard labor but was granted probation upon payment of a fine in the amount of $500. The appeal is from the judgment and sentence. *Held:*

1. Defendant moved for a directed verdict because the State did not make a showing that, applying contemporary community standards, the predominant appeal of the comic book was to prurient interests and was without redeeming social value.

First of all, while a trial judge may direct a verdict of not guilty in a criminal case, it is never error to fail to do so. *Nalley v. State,* 11 Ga. App. 15 (7) (74 SE 567); *Bell v. State,* 15 Ga. App. 718 (2) (84 SE 150); *Curtis v. State,* 28 Ga. App. 219 (4) (110 SE 907); *Johnson v. State,* 75 Ga. App. 581 (1) (44 SE2d 149). It is true the General Assembly of Georgia in 1971 enacted a statute which provides that the trial judge "may" direct a verdict of acquittal (Ga. L. 1971, pp. 460, 461; *Code Ann.* § 27-1802), but this is simply permissive, not mandatory, and the Act is cumulative of the existing law, as such right already inhered in the trial judge. See *Bell v. State,* 15 Ga. App. 718 (2), supra. But there was sufficient evidence for a conviction in this case, even though the State did not introduce any witness to testify as to what the contemporary community standards are, and whether the comic book in question offended same; and whether its appeal was to prurient interests, and whether it was without redeeming social value. A jury is entitled to consider as proven certain matters, even without any testimony being introduced. It is provided in *Code* § 38-102 that "presumptive evidence consists of inferences drawn by human experience from the connection of cause and effect, and observations of human conduct." Thus, jurors are entitled to use their own common sense as intelligent human beings on many questions. They most likely knew what "contemporary community standards" are as regards the comic book in evidence, both in Clarke County and in other parts of the State of Georgia, and of the United States. Each of them doubtless had much knowledge of what is going on in this country through news media, radio, television, newspapers, etc. Shakespeare laid the scene of many of his plays in Italy, though he had never visited that country. Thomas E. Watson wrote "The Story of France" which is highly regarded by the French people, though he never visited France. It is most likely that the jurors found this book, as I do, offensive, utterly without redeeming social value, published for the

purpose of appealing to prurient interest in perversion and degeneracy, and an affront to the contemporary community standards of any community anywhere.

2. Defendant contends the trial judge erred in failing to direct a verdict of not guilty after defendant had offered testimony tending to show that the comic book did not violate the various elements of *Code Ann.* § 26-2101 (Ga. L. 1968, pp. 1249, 1302; 1971, p. 344) as to contemporary community standards, appeal to prurient interests, and being without redeeming social value. But the testimony of such witness, at best, created an issue for determination by the jury on these questions, and did not authorize a directed verdict of not guilty.

3. Defendant enumerates as error the action of the trial court in "refusing to allow appellant's witness Nordan to testify to community standards other than the local community of Athens, Clarke County, Georgia. The trial court excluded a large portion of this testimony because defendant's counsel sought to elicit same by asking leading questions, and which, of course, the trial judge properly excluded. Thereafter, the witness was allowed to testify as to whether the comic book offended contemporary community standards, *not as an expert,* but as an individual with the right to express an opinion on the subject. Assuming arguendo that the enumeration of error properly described the action of the trial court to which exception is taken, the witness in effect was allowed to testify under the same rules as an expert. An expert in such cases gives opinion testimony only, which the jury may completely disregard, without rhyme or reason. *Code* § 38-1710; *Ocean Acc. & Guarantee Corp. v. Lane,* 64 Ga. App. 149 (1) (12 SE2d 413).

4. Defendant enumerates as error the trial court's charge in which he limited "contemporary community standards" to the local community, and excluded consideration of community standards of other places. This is the question that gives us most concern in this case. The two excerpts from the charge to which exception is taken are as fol-

lows: "1. The standard to be applied is not what may or may not be obscene in other jurisdictions, but what is acceptable to the *local community*." (Emphasis supplied.) "2. You jurors are taken to represent the average members of your own community, and as triors of facts you are charged with the responsibility of making such determination, guided by the evidence presented and by your individual and collective awareness of the standards and norms of *your own community*." (Emphasis supplied.)

The Supreme Court of the United States had declared the test for obscenity to be whether or not "to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." Roth v. United States, 354 U. S. 476 (77 SC 1304, 1 LE2d 1498); Jacobellis v. Ohio, 378 U. S. 184 (3) (84 SC 1676, 12 LE2d 793). The Supreme Court therein specifically holds that by the term *"community"* is meant, not the minute local community, but *"society at large,"* that is, *"the public, or people in general."* The Supreme Court of Georgia has held otherwise in the case of *Gornto v. State,* 227 Ga. 46, 48 (178 SE2d 894). But, of course, this decision must give way to the decisions by the United States Supreme Court cited above. See *Thornton v. Lane,* 11 Ga. 459 (4). Thus, the concept of obscenity, as described by the United States Supreme Court in the above cases is the meaning applied by society at large which may vary "from time to time," but "not from county to county, or town to town." Jacobellis v. Ohio, supra, p. 193. It simply cannot be so reduced to a standard applied by "a particular local community." Id., p. 192. Such would be "intolerable." Manual Enterprises v. Day, 370 U. S. 478, 488 (82 SC 1432, 8 LE2d 639). Thereafter, in Memoirs v. Massachusetts, 383 U. S. 413 (86 SC 975, 16 LE2d 1), that court listed three tests which must be satisfied before written materials (a book) could be held to be obscene. These are: (1) That the dominant theme of the material taken as a whole appeals to prurient inter-

est in sex; (2) That the material is patently offensive because it affronts contemporary community standards relating to the description or representations of sexual matters; and (3) that the material is utterly without redeeming social value. See also Redrup v. New York, 386 U. S. 767 (87 SC 1414, 18 LE2d 515).

The trial court erred in limiting the meaning of contemporary community standards to "the local community—to your own community." If we were allowed to apply and be guided by the recent *Gornto* case by the Supreme Court of our own State, the trial court's charge would have been correct; but we are controlled by the three recent decisions of the United States Supreme Court, to wit, Jacobellis, Manual Enterprises and Roth, supra, and consequently we hold that the trial court's charge in these two instances constituted reversible error.

*Judgment reversed. Bell, C. J., and Stolz, J., concur.*

ARGUED OCTOBER 2, 1972—DECIDED NOVEMBER 15, 1972—REHEARING DENIED DECEMBER 15, 1972.

*Alexander & Jarrard, Alan M. Alexander, Jr.,* for appellant.

*Ken Stula, Solicitor,* for appellee.