55373. PIERCE v. THE STATE.
55374. CALLAHAN v. THE STATE.
55375. WICKHAM v. THE STATE.
55376. RITCHIE v. THE STATE.

BANKE, Judge.
Each of the above defendants was convicted of distributing obscene materials in violation of Code Ann. § 26-2101. Each attacked the constitutionality of the statute and appealed to the Supreme Court, which rejected the constitutional attacks and transferred the appeals to this court in *Pierce v. State,* 239 Ga. 844 (239

SE2d 28) (1977) and *Ritchie v. State,* 240 Ga. 15 (240 SE2d 551) (1977). Since the appeals are before us on identical enumerations of error and almost identical briefs, we have considered them together.

1. The appellants contend that the items seized were constitutionally protected forms of expression that cannot lawfully be termed obscene. Several of the publications introduced into evidence do not accompany the physical evidence transmitted to this court. Therefore, we are unable to make an independent determination of whether they are obscene as we would ordinarily be required to do under Jenkins v. Georgia, 418 U. S. 153, 160 (94 SC 2750, 41 LE2d 642) (1974). See *Dyke v. State,* 232 Ga. 817, 821 (209 SE2d 166) (1974); *Simpson v. State,* 144 Ga. App. 657 (3) (1978). However, none of the convictions in the cases before us was dependent upon a finding that the missing publications are obscene, since each count which charges the distribution of one of the missing publications also charges distribution of various items of sexual paraphernalia. As to these counts, "the jury could lawfully return a finding of guilty of distributing obscene material upon being convinced beyond reasonable doubt that any one of the . . . items was obscene." *Robinson v. State,* 143 Ga. App. 37 (3), 39 (237 SE2d 436) (1977). From our own examination of the physical evidence, it is abundantly clear that these items were "designed or marketed as useful primarily for the stimulation of human genital organs . . ." Code Ann. § 26-2101 (c). Accordingly, the verdicts on these counts were authorized.

Two counts in Case No. 55376 were based solely upon publications, to wit: "Pleasure Tools and Their Uses" and "Hot Cheerleaders." We have examined both these publications and have concluded that they, too, are obscene as a matter of law; that is, applying contemporary community standards and considering each magazine as a whole, they appeal predominantly to the prurient interest, lack serious literary, artistic, political or scientific value, and depict in a patently offensive way the types of sexual conduct specifically listed in the statute. Code Ann. § 26-2101 (b). Therefore, they are not protected expression under the First and Fourteenth Amendments to

682

the United States Constitution (see Miller v. California, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973); Simpson v. State, 144 Ga. App. 657 (3), supra), and the verdicts on these counts were also authorized.

2. The appellants also urge that seizure of the sexual devices without a warrant violated the constitutional prohibition against unreasonable searches and seizures. This contention is without merit. See Sewell v. State, 238 Ga. 495 (2) (233 SE2d 187) (1977); Robinson v. State, 143 Ga. App. 37 (5), supra; Wood v. State, 144 Ga. App. 236 (1) (240 SE2d 743) (1977); Simpson v. State, 144 Ga. App. 657 (2), supra; Underwood v. State, 144 Ga. App. 684 (3) (1978).

3. The jury instructions on constructive knowledge did not violate constitutional standards for proof of scienter. See Sewell v. State, 238 Ga. 495 (4), supra; Wood v. State, 144 Ga. App. 236 (3), supra; Simpson v. State, 144 Ga. App. 657 (4), supra.

Judgment affirmed. Smith, J., concurs. Deen, P. J. concurs specially.

SUBMITTED FEBRUARY 2, 1978 — DECIDED APRIL 4, 1978 — REHEARING DENIED APRIL 18, 1978 — CERT. APPLIED FOR.

Michael Clutter, Robert Eugene Smith, for appellants.

Arthur K. Bolton, Attorney General, Hinson McAuliffe, Solicitor, Leonard W. Rhodes, Richard E. Stark, Assistant Solicitors, for appellee.

DEEN, Presiding Judge, concurring specially.

I fully concur with all that is said in the majority opinion. The evidence is abundant, ranging from magazines showing close up photography pornography of group sex, penis extensions, dildos with hand cranks on the end for rotation and stimulation of sex organs, plastic vaginas, rubber female faces with extra large mouth openings, and one device listed in the Manual of Erotic Sex as an anal crank. Counsel referred to the latter: "I think a lot of these devices may be more anus oriented

than they are genitalia oriented." The trial judge ruled that if it is an anal device it is sexually oriented material.

The state's expert witness in the field of science was a professor at Georgia State and a clinical psychologist in private practice, relating the materials in evidence as appealing to the prurient interest within homosexuality. She testified that the latter was a personality disorder deviancy or sickness, and not a variancy. She stated: "A. There are two fields of thought. If you are along the line of the biological approach, if you know your genetics . . . Q. And the hormones. A . . . you know that it's quite possible for the child to be born with an XXY chromosome or XXY chromosome. It depends upon the genetic factors of the child. This is one theory. The other theory is that homosexuality is learned, that it comes from the environment, and there are good proponents on both sides."

Thus the testimony points up two differing philosophies within the parameters of the scientific community as to possible addiction or appeal of pornography to the prurient interest within homosexuality. First, that it is inherited through genetic factors of the child (some say if it is inherited genetically it is excusable in the law), and second, it is not phylogenetically programmed but is only learned behavior or comes from circumstances within the environment. The expert then stated that as to the last theory there are still two additional "schools of thought." Some say it is acquired at the early age of five or six, while others believe it is learned later in life. After relating Dr. Freud's work in this field she stated there was absolutely no serious educational or scientific value in the magazines and materials.

Counsel's last question to this expert was: "Q. Doctor, does your philosophy or your testimony regarding homosexuality and prurient appeal have anything to do with your religious beliefs? . . . A. I might answer your question in this way: My religious belief is the philosophy I live by, and colors any thinking that I do in any way, shape, form, or fashion. Q. Thank you, ma'am. Mr. Smith: I have no further questions."

It is appropriate to note that there are also experts who testify as to the positive educational and scientific value of similar magazines and materials doing so based on their religious beliefs, philosophy, and commitments which color their thinking in every way, shape, form and fashion. See "Humanists: Manifesto II," a nontheistic religion, Religions of America, Leo Rosten, Simon and Schuster, N. Y. (1975), affirming "approved sexual freedom and sexual conduct between consenting adults (homosexuals)," as part of their religious creed, commandments, social action or faith. This is confirmed in an article written by James W. Prescott, Ph.D., entitled "Child Abuse in America" wherein Prescott, a board member of The American Humanist Association, a nontheistic religion, and developmental neuropsychologist with the National Institute of Child Health and Human Development of the U. S. Department of Health, Education and Welfare, states in the article: "Tension must be relieved, whether through the warm intimacy of sexual contact or through brutal acts of senseless violence." In effect he recommends premarital sex, promiscuity and pornography as a religious view, and as a deterrent to crime. Note the reverse in *Megar v. State,* 144 Ga. App. 564, 568 (241 SE2d 447), and compare a quotation from the March 1, 1978, issue of the Atlanta Journal of Dr. Fred Crawford of the Emory University Center for Research in Social Change: " 'I've studied this for 30 years and I've seen plenty of evidence that there's a relationship between obscene material and sex crime,' Crawford relates. 'I'd say a large percentage of those who indulge in commercial sex are mentally ill, and some may be in danger of becoming psychotic,' he adds. He related a case he had studied of a 16-year-old boy charged with the rape and murder of a 5-year-old girl. 'He had pictures and magazines and books all over his house — all sexually stimulating material.' "

In case no. 55374 two experts testified, one on each side of the case, one indicating the presence of serious educational and scientific value and the other stating there was none. The jury could believe either one or may "use their own common sense as intelligent human beings. . ." *Feldschneider v. State,* 127 Ga. App. 745, 746

(195 SE2d 184) (1972). I would affirm the verdict of the jury.