## 58746. FLYNT v. THE STATE.

CARLEY, Judge.

Appellant appeals from his conviction on eleven counts of distributing obscene materials, eight issues of *Hustler* magazine and three issues of a magazine entitled *Chic.*

1. Code Ann. § 26-2101 prohibits the knowing distribution of obscene materials. Material is obscene if: (1) to the average person, applying contemporary community standards, taken as a whole, it predominantly appeals to the prurient interest — a shameful or morbid interest in nudity, sex or excretion; (2) taken as a whole, it lacks serious literary, artistic, political or scientific value; and (3) it depicts or describes in a patently offensive way, specifically defined sexual conduct. Code Ann. § 26-2101 (b). In the instant case, the state introduced the eleven magazines into evidence and produced several expert witnesses in rebuttal on the obscenity question. Appellant enumerates as error the exclusion of certain evidence which, he contends, had relevancy to the "contemporary community standards" of Fulton County and whether the eleven magazines he was charged with distributing were or were not violative of those standards.

### I. Public Opinion Survey

The trial judge excluded evidence of the results of a public opinion survey. The results of properly conducted public surveys have been admitted into evidence in other jurisdictions. See, e.g., Zippo Mfg. Co. v. Rogers Imports, Inc., 216 FSupp. 670 (S. D. N. Y. 1963). Assuming without

deciding that the results of such surveys are, as a general proposition, admissible into evidence in Georgia as against a hearsay or other objection, it is clear that to be admissible into evidence in the specific case in which their introduction is sought, the survey results "must relate to the questions being tried by the jury and bear upon them either directly or indirectly." Code Ann. § 38-201. The survey questions merely inquired as to general opinions concerning the depiction of "nudity and sex," defined as "exposure of the genitals and sexual activity," and whether adults should have the opportunity to obtain such materials. The results of this survey were not relevant to the issue in the instant case — whether the eleven magazines were obscene within the definition of Georgia law. The depiction of "nudity and sex" is not per se obscene. See Jenkins v. Georgia, 418 U. S. 153, 161 (94 SC 2750, 41 LE2d 642) (1974). It is obscene only if the depiction appeals to a shameful or morbid interest in nudity and sex and coalesces with the other elements of Code Ann. § 26-2101 (b). Whether or not 76 of a 100 persons would say that the change in "standards" over recent years in the depiction of nudity and sexual activities is "more acceptable" does not show that those same persons would find that the eleven magazines in question depicted sex and nudity in an "acceptable" manner. There was no attempt in the survey itself to determine whether the respondents were of the opinion that the contents of the eleven magazines would or would not exceed the limits of permissible candor in the depiction of "nudity and sex." One may be of the opinion that adults have the right to obtain and view materials depicting "nudity and sex" although they would themselves regard the material as exceeding the bounds of "contemporary community standards" and as patently offensive. The survey asked no more than whether the respondents objected to the dissemination of materials depicting nudity and sex to willing adults, not whether they regarded material such as that depicted in appellant's magazines as obscene in themselves. The survey and expert testimony concerning it were properly excluded. Commonwealth v. Trainor, 374 NE2d 1216 (Mass. 1978); Commonwealth v. Mascolo, 386 NE2d 1311 (Mass. App. 1979).

## II. Jury View

The trial court denied appellant's request that the jury be transported around the City of Atlanta in order to view various locations where sexually explicit materials were available. A jury view is a matter within the trial court's discretion. *Sutton v. State,* 237 Ga. 418 (228 SE2d 815) (1976). While the question of a jury view in the context of an obscenity trial apparently has not arisen in this state, other jurisdictions have held that a view such as that proposed by appellant is irrelevant in assisting the jury in reaching an understanding of the contemporary standards held by the average person in the community. See, e.g., Commonwealth v. Mascolo, 375 NE2d 17, 26 (Mass. App. 1978) (cert. denied 439 U. S. 899 (— SC —, 58 LE2d 247)). The fact that sexually explicit material may be available in certain areas of the City of Atlanta is no indication that the average person, applying contemporary community standards, would not consider the eleven magazines to be obscene. State v. J-R Distributors, Inc., 512 P2d 1049, 1083 (Wash. 1973) (cert. denied 418 U. S. 949 (94 SC 3217, 41 LE2d 1166)). The request for a jury view was not erroneously refused.

## III. Comparable Evidence

We now deal with the exclusion of what is termed "comparative" evidence — evidence with which appellant would have the jury compare his magazines in determining their obscenity or nonobscenity. "There has been a considerable amount of confusion in the courts as to the admissibility and function of comparison evidence in obscenity cases. Some jurisdictions have held it reversible error to reject such evidence, while others exclude it rather summarily." United States v. Womack, 509 F2d 368, 374 (D. C. Cir. 1974) (cert. denied 422 U. S. 1022 (95 SC 2644, 45 LE2d 681)). Thus we perceive the threshold question to be whether "comparable" evidence is admissible in this state in an obscenity case.

"[T]he Fourteenth Amendment does not permit a conviction . . . unless the work complained of is found substantially to exceed the limits of candor set by contemporary community standards. The community

cannot, where liberty of speech and press are at issue, condemn that which it generally tolerates. This being so, it follows that due process — 'using that term in its primary sense of an opportunity to be heard and to defend (a) . . . substantive right,' [cit.] — requires a State to allow a litigant in some manner to introduce proof on this score. While a State is not debarred from regarding the trier of fact as the embodiment of community standards, competent to judge a challenged work against those standards, it is not privileged to rebuff *all* efforts to enlighten or persuade the trier." Smith v. California, 361 U. S. 147, 171 (80 SC 215, 4 LE2d 205) (1959) (Opinion of Justice Harlan). The landmark case standing for the proposition that the defendant in an obscenity trial may introduce in his defense comparable materials to those he is charged with distributing is Womack v. United States, 294 F2d 204 (D. C. Cir. 1961). "The predicate for a conclusion that a disputed piece of [material] is acceptable under contemporary community standards, as shown by proffered other matter already in unquestioned circulation, must be that the two types of matter are similar. And as another part of his foundation he must show a reasonable degree of community acceptance of works like his own." Womack v. United States, 294 F2d at 206, supra.

We find the state's argument that the issues of the admissibility of comparable evidence in general and the Womack test in specific have heretofore been considered and rejected in Georgia to be unpersuasive. *Montross v. State,* 72 Ga. 261 (1884), and *Gore v. State,* 79 Ga. App. 696 (54 SE2d 669) (1949), relied upon by the state, were decided prior to the decisions of the United States Supreme Court in Roth v. United States, 354 U. S. 476 (77 SC 1304, 1 LE2d 1498) (1957), and Miller v. California, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973). It was initially the Roth decision and, subsequently, the Miller decision which established "contemporary community standards" as an element in the determination of obscenity. And it is those standards which the defendant in an obscenity case seeks to establish by the introduction of comparable evidence. Womack v. United States, 294 FSupp. 204, supra. The rationale behind the admission of "comparative" evidence

is to allow the defendant in an obscenity case the opportunity to attempt to persuade the trier of fact that the challenged material does not exceed contemporary community standards, as represented by the comparable material and against which the challenged material is judged. The comparative material is tangible evidence of contemporary community standards. United States v. Womack, 509 F2d 368, supra and *Dumas v. State,* 131 Ga. App. 79 (205 SE2d 119) (1974) held only that magazines and publications were not erroneously excluded from evidence in the trial of one charged with distributing obscene medallions. We do not view *Dumas* as a rejection of the right of a defendant in an obscenity case to introduce comparable evidence, as that evidence is defined in Womack. Rather, it is clear that the excluded evidence in *Dumas* — magazines — would not have satisfied the Womack requirement that the proffered evidence must be "similar" to the alleged obscene material — medallions.

Nor are we persuaded by the state's arguments that we should, in the instant case, reject the right of a defendant in an obscenity trial to introduce evidence which meets the Womack requirements. Such evidence would not be irrelevant. It would show "community acceptance" of material "similar" to that distributed by the defendant and thus would have bearing on the issue before the jury — whether the defendant knowingly distributed obscene material. "Since the law through its functionaries is 'applying contemporary community standards' in determining what constitutes obscenity [cit.], it surely must be deemed rational, and therefore relevant to the issue of obscenity, to allow light to be shed on what those 'contemporary community standards' are. Their interpretation ought not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they are believed to be by the individual juror or judge. It bears repetition that the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards.' " Smith v. California, 361 U. S. 147, 165, supra. (Concurrence of Justice Frankfurter.)

We also find without merit the state's contention that the right to introduce comparable evidence, as defined in Womack, should be rejected for reasons of "trial economy." While expert testimony as to the nonobscenity of the challenged material may be before the jury, *tangible* evidence, in the form of similar material accepted in the community, should not be denied the defendant or the jury in an obscenity case on the grounds that it is cumulative. If the trial judge is given discretion in the *amount* of comparable evidence that will be admitted, and we believe he should be given such discretion, there is no reason why the trial should become unmanageably complex and lengthy. United States v. Womack, 509 F2d at 378, supra.

Since it is "the right of one charged with obscenity — a right implicit in the very nature of the legal concept of obscenity — to enlighten the judgment of the tribunal, be it the jury or . . . the judge, regarding the prevailing literary and moral community standards," Smith v. California, 361 U. S. 147, 164, supra, (concurrence of Justice Frankfurter), we are persuaded that evidence which satisfies the Womack test is relevant, probative evidence which should be admitted in an obscenity trial for the consideration of the trier of fact. We hereby adopt this test in Georgia. "[The Womack test] merely requires an adequate foundation to be laid for the introduction of comparison evidence. Since the issue at hand is the nature of contemporary community standards with respect to 'works like his own,' in order for there to be a rational basis for its admission there must be a showing that the proffered evidence (1) is similar to his own, and (2) enjoys a reasonable degree of community acceptance. The burden is on the defendant and in the absence of such a showing, the evidence must be excluded as lacking sufficient probative value." United States v. Womack, 509 F2d at 377, supra.

(a) *Magazines and Books Purchased by Witnesses.* Turning now to the evidence excluded in the instant case, we must decide whether the Womack test for admissibility was satisfied and whether the evidence was thus erroneously excluded. The first exclusion of so-called comparable evidence occurred when appellant called as his witness a private investigator who had conducted his

own personal survey of sexually explicit materials. His testimony concerning the results of this survey, through which he sought to show community standards, was excluded, as were various magazines he had purchased in the course of his investigation. Exclusion of this witness' testimony and the magazines was not erroneous. Even assuming without deciding that the excluded material was "similar" to that appellant was charged with distributing, there was no evidence as to the community "acceptance" of the material. The only testimony was that the witness had purchased the magazines at stated times and places and had personally observed some sales to others. "Evidence of mere availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance . . . Mere availability of similar material by itself means nothing more than that other persons are engaged in similar activities." United States v. Manarite, 448 F2d 583, 593 (2d Cir. 1971) (cert. denied 404 U. S. 947 (92 SC 281, 30 LE2d 264)). Likewise, the exclusion of several books and magazines purchased by another witness in local bookstores and drugstores was not erroneous. Here too the proffer of evidence was to their "mere availability" rather than to "a reasonable degree of community acceptance" of the materials.

(b) *Library Materials.* Photocopies of excerpted parts of sexually explicit books available in the local library were excluded from evidence. Though we are not prepared to so hold, even assuming that materials, because they are located in the local library, are, for that reason alone, "reasonably accepted by the community," and that photocopies rather than originals would otherwise be admissible under our "best evidence" rule, Code Ann. § 38-203, we do determine that photocopies of *parts* of books available at the local library would not satisfy the "similarity" foundation required under Womack. In determining the obscenity or nonobscenity of appellant's magazines they must be "taken as a whole" and, therefore, comparative evidence must also be proffered "as a whole" to satisfy the defendant's burden under Womack of demonstrating that the comparable

evidence is "similar" to his challenged material. United States v. West Coast News Co., 228 FSupp. 171, 200 (W. D. Mich. 1964) (revd sub nom. on other grounds Aday v. United States, 388 U. S. 447 (87 SC 2095, 18 LE2d 1309)).

(c) *Movie Advertisements.* Testimony regarding a witness' record of the titles of adult movies advertised in the local newspapers was properly excluded. First, we fail to see how mere *advertisements* for films are "similar" to magazines. Cf. *Dumas v. State,* 131 Ga. App. 79, supra. Secondly, advertisements would show only that these films were merely "available," not necessarily "accepted," in the community. Finally, our adoption of the Womack test does not eliminate the otherwise valid, rational rules governing the admissibility of evidence and, therefore, even assuming a record kept by the witness of the titles of adult movies would satisfy the Womack test for relevancy and probative value, such a record would not be the "best evidence" of the advertisements themselves. *Schley v. Lyon,* 6 Ga. 530 (6) (1849); *Barrett v. Butler,* 54 Ga. 581 (1875).

(d) *Magazines Distributed by Atlanta News Agency.* Also excluded from evidence were several magazines distributed by the Atlanta News Agency, Inc. The witness whose testimony was the vehicle by which appellant attempted to lay the Womack foundation for the proffer of this evidence was the chief financial officer of the corporate-distributor. While the witness was unable to testify from personal knowledge as to the contents of the "comparable" magazines and thus was unable to testify as to their similarity to the eleven magazines in issue, appellant's attorneys had marked each issue with references which showed such similarity. We have reviewed the "comparable" magazines and find that they bear a "reasonable resemblance" to appellant's so as to satisfy the Womack "similarity" foundation. See United States v. Pinkus, 579 F2d 1174 (9th Cir. 1978). This witness further testified as to distribution figures for the allegedly comparable magazines to some 324 retail outlets in Fulton County. We view distribution figures — the number of magazines available at newsstands and other outlets — as insufficient evidence of community acceptance to satisfy this element of the Womack foundation. "The defendant

in an obscenity prosecution . . . is entitled to an opportunity to adduce relevant, competent evidence bearing on the issues to be tried. But the availability of similar materials on the newsstands of the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with circulating . . . [T]he mere fact that materials similar to the [material] at issue here 'are for sale and purchased at book stores around the country does not make them witnesses of virtue.' [Cit.] . . . 'Mere availability of similar material by itself means nothing more than that other persons are engaged in similar activities.' [Cit.]" Hamling v. United States, 418 U. S. 87, 125 (94 SC 2887, 41 LE2d 590) (1974).

Appellant contends that sales figures, as opposed to mere distribution figures, were proffered and that such evidence of sales meets the Womack "community acceptance" requirement. We agree that sales figures may be used to satisfy the Womack "community acceptance" foundational requirement though "a determination of the precise point at which a publication is so widely sold and is so generally available in the community as to warrant a finding of community acceptance is difficult to fix with assurance." United States v. Womack, 509 F2d at 379, supra. However, we need not decide whether sales figures for the magazines in the instant case were sufficient to satisfy this requirement because the record does not support appellant's argument that such figures were "offered." When the witness was asked if the distribution figures to which he had testified took into account magazines which were returned to the distributor by the retailers as unsold, he responded that the figures were for distribution and did not reflect any return by the retailers of unsold magazines. When the witness was asked what percentage of the distribution figures represented sales, an objection was made. The witness then responded that there were no detailed sales records as such, that sales figures would have to be "compiled" from the "raw material" that was available at the corporate-distributor's headquarters. The witness was prepared to testify as to his "prior knowledge" of sales figures from "compiling and looking" at the distributor's computer-controlled records.

The trial court then indicated that "the records will constitute the highest and best evidence. If he has those records, I will allow him to testify from them." Thereupon, appellant's counsel stated: "[W]e are going to ask [the witness] to go back and get his records and we will put him on at another time." It is thus apparent that the trial court excluded the witness' testimony as to sales figures because it was not the "best evidence" and that appellant acquiesced in this ruling. Although appellant's counsel — after agreeing to have the witness return with the records — continued to try to convince the trial court to allow the witness to testify from his "prior knowledge" of the records, the judge refused, properly we believe, at that point to allow the witness to testify as to the compilation of the records. Cf. *Blackshear Mfg. Co. v. Harrell,* 191 Ga. 433, 436 (6) (12 SE2d 328) (1940).

Appellant's counsel did not, however, follow the procedure he himself had suggested. Counsel attempted to make a proffer of the witness' testimony, by stating later that afternoon: "If [the witness] would have been permitted to testify, he would have testified as follows: that based upon the distribution figures that he testified to here this morning it would be his judgment and recollection that between fifty and sixty percent of the magazines distributed in Fulton County were sold in Fulton County. That his recollection in that regard would be based upon the information that he actually reviewed when he compiled the distribution figures which he read here this morning and we marked as exhibits. And he would further testify — and this was the important point I was trying to raise this morning — that there are in fact no existing records which demonstrate the actual sales of these magazines in Fulton County. Those sales records were destroyed in the ordinary course of business of Atlanta News Agency, and that therefore there is no best evidence, that being the records; that he was the best evidence of the information that existed at this particular time." After this "proffer" the trial court continued to refuse to allow the magazines into evidence.

We do not view this proffer by appellant's counsel as a procedurally sufficient "offer" of evidence of sales figures so as to satisfy the "community acceptance" foundation of

the Womack test for admissibility. When the testimony of the witness was originally offered as to sales figures, it was refused as not being the "best evidence" and this ruling was acquiesced in by appellant's counsel. Although it was agreed that the witness would be recalled, no such recall was ever made and there was no explanation given as to why this was not done. Thus the testimony of the witness himself was never tendered as the "best evidence" of sales figures. *Holley v. Lawrence,* 194 Ga. 529, 532 (22 SE2d 154) (1942); *Stanley v. Stanley,* 138 Ga. App. 560 (226 SE2d 800) (1976). No pertinent question as to sales figures was ever propounded to the witness after a showing that his testimony would be the "best evidence" thereof. *Thompson v. Hill,* 143 Ga. App. 272 (238 SE2d 271) (1977); *Williams v. Tribble,* 140 Ga. App. 390 (231 SE2d 86) (1976); *Seaboard A. L. R. v. Vaughn,* 19 Ga. App. 397, 398 (2) (91 SE2d 516) (1916). The only "offer" of this witness' testimony as the "best evidence" of sales figures was the unsworn statement of appellant's counsel, made when the witness was not on the stand. We consider this as insufficient offer of this witness' testimony. See 88 CJS 183, 186, Trials, §§ 79, 81. Rather, on these facts, it appears that the testimony of the witness was excluded as not the "best evidence," appellant agreed to have the witness return with that evidence, and, instead of recalling the witness to the stand to explain why his "knowledge" of sales figures was the "best evidence," and to tender his testimony, counsel attempted to do so. Since the witness himself did not testify that the records had been destroyed, he was not made available for cross examination as to when, where, why or how the destruction had taken place. Therefore, there was no proper "offer" of evidence as to sales of the "comparable" materials and no error in excluding them from evidence. *Watts v. Six Flags Over Ga.,* 140 Ga. App. 106, 108 (4) (230 SE2d 34) (1976).

Appellant further contends that sales figures for the comparable magazines were introduced into evidence when the order of a federal judge was read into evidence by the state. The record apparently does not contain a copy of this order which was read into evidence. The transcript is hopelessly unclear as to whether the "figures" contained

in the federal judge's order represented net sales figures of the magazines in Fulton County or are merely distribution figures representing the number of magazines "sold" by the distributor to retailers and thus reflect mere availability. Furthermore, "[T]he judgment in a civil action is not admissible in a criminal action to prove any fact determined in the civil action." Agnor's Ga. Evidence 266, Hearsay, § 11-46. (1976); Green, Ga. Law of Evidence 630, § 318 (1957). Pretermitting any other deficiency in this "evidence" to satisfy the Womack "acceptance" foundational requirement, the order of the federal judge as to these "figures" was hearsay and without probative value. Cf. *Goldberg v. State,* 150 Ga. 59 (103 SE 90) (1920).

It is thus clear that insofar as the Womack foundation for the introduction of the comparable magazines distributed by the Atlanta News Agency is concerned, the sole competent and probative testimony was that a certain specified number of such issues of the magazines were distributed to 324 retail outlets in Fulton County and were thus "available" to be purchased. This is insufficient evidence of "a reasonable degree" of the magazines' acceptance in the community to satisfy the Womack test. See Hamling v. United States, 418 U. S. 87, 127, supra. The magazines were, therefore, properly "excluded as lacking sufficient probative value." United States v. Womack, 509 F2d at 378, supra.

2. Appellant urges that several remarks by the district attorney during his closing argument were improper. Having carefully reviewed each of these statements, we conclude that the remarks were not improper for any of the reasons urged.

"A district attorney 'may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard.' [Cit.] The statements made here appear innocuous in comparison with remarks held to be within permissible bounds in cases such as *Patterson v. State,* 124 Ga. 408, 409 (52 SE 534) [1905], *Brand v. Wofford,* 230 Ga. 750, 754 (9) (199 SE2d 231) [1973], and *Jackson v. State,* 219 Ga. 819, 821 (136 SE2d 375) [1964]. 'Flights of oratory and false logic do

not call for mistrials or rebuke. It is the introduction of facts not in evidence that requires the application of such remedies.' [Cit.] 'It is not objectionable for counsel to embellish the argument with figurative speech, provided prejudicial facts extrinsic of the record are not introduced.' [Cits.] The statements here did not involve matters extraneous to the evidence presented. Accordingly, we find no error." *Bryan v. State,* 137 Ga. App. 169, 174 (223 SE2d 219) (1976).

3. Appellant enumerates as error the state's recall of a witness after the close of the evidence and the trial court's reopening of the case to allow her to testify. This witness, an expert first called by the state in rebuttal, had originally testified, to the apparent surprise of the state, that in her opinion the eleven magazines in issue did not, "generally speaking," appeal predominantly to the prurient interest of the average adult in Fulton County. After the close of evidence, this witness informed the district attorney that she had misunderstood the question and that her answer did not represent her true feelings. Based upon this, the trial court reopened the case and allowed the witness to be recalled. On recall, the witness testified that the reaction of the average adult in Fulton County upon examining the eleven magazines would be "a sense of lust . . . a shameful, unwholesome sense."

In analyzing whether this procedure was erroneous, we must begin with the general proposition that the trial judge is clothed with a very broad discretion in the matter of allowing additional evidence at any stage of a trial, and his decision in this regard will not be interfered with except where it appears there has been an abuse of this discretion. *Johnson v. State,* 164 Ga. 47 (137 SE 553) (1927); *Goldberg v. State,* 22 Ga. App. 122 (95 SE 541) (1918). This discretion extends to allowing the state to reopen the case and recall a witness for the purpose of amplifying testimony previously given. *Sims v. State,* 195 Ga. 485, 490 (6) (25 SE2d 1) (1943). This discretion also extends to allowing a witness to be recalled, after the close of evidence, to correct his former testimony, which he contends was mistaken. *Walker v. Walker,* 14 Ga. 242 (7), 251 (1853). There being no abuse of discretion by the trial judge in the instant case, there was no error.

4. Appellant contests the sufficiency of the evidence, contending that the eleven magazines are not obscene as a matter of law. In accordance with *Dyke v. State,* 232 Ga. 817, 821 (209 SE2d 166) (1974), we have made an independent appellate review of the material to decide the constitutional fact of obscenity. The magazines come within the definition of Code Ann. § 26-2101. *Dobbs v. State,* 145 Ga. App. 14 (243 SE2d 275) (1978).

5. Appellant attacks the sufficiency of the evidence to show that he distributed obscene material in Fulton County. Appellant stipulated that he was the editor and publisher of the eleven magazines, that he was aware of and responsible for the contents and materials contained therein, and that all eleven magazines had been sold in Fulton County, three of them by appellant personally. This supports the finding that appellant "distributed" or at least "aided and abetted" in the distribution of the eleven magazines. *Dyke v. State,* 232 Ga. 817, 822, supra; *Allen v. State,* 144 Ga. App. 233, 234 (3) (240 SE2d 754) (1977). There was no error.

6. At the conclusion of the court's charge, the jury left to begin their deliberations. Almost immediately the bailiff returned and announced that the jury wanted the "big chart." This was an apparent reference to a chart which contained the wording of the Georgia obscenity statute, Code Ann. § 26-2101. The trial court informed the bailiff to "Tell them it is not evidence and they are not entitled to see it." Appellant urges that this was error — that the request of the jury indicated they were confused and in doubt as to the law and that the trial court should have recharged them on the obscenity statute.

This argument is meritless. *"When the jury requests the court to recharge them on any point, it is the court's duty to do so. [Cits.]"* (Emphasis supplied.) *Edwards v. State,* 233 Ga. 625, 626 (2) (212 SE2d 802) (1975). Clearly the jury's request for the "big chart," without more, does not indicate that they were confused or in doubt as to the law of obscenity or that they wished to be reinstructed on that point. If they were confused and wished to be reinstructed, they would, no doubt, have so requested after being informed that the "big chart" was not available to them during their deliberation. They made no

such request. Compare *Freeman v. State,* 142 Ga. App. 293, 294 (4) (235 SE2d 560) (1977); *Carter v. State,* 142 Ga. App. 351, 352 (5) (235 SE2d 750) (1977). There was no error.

7. Appellant enumerates as error the denial of his motion to quash and dismiss the indictment on the ground that Code Ann. § 26-2101 "as drawn, construed, and applied, is repugnant to the First and Fourteenth Amendments to the United States Constitution." It is urged that Code Ann. § 26-2101 (e) violates the Equal Protection Clause in that it provides an affirmative defense to a charge of distributing obscene materials if they were disseminated to one associated with an institution of higher learning teaching or studying such materials or to one whose receipt of such materials was authorized in writing by a licensed medical practitioner or psychiatrist. The argument is that this classification, which would provide a defense to some distributors of obscene materials but not to others, such as appellant, charged with violating Code Ann. § 26-2101, does not further an appropriate state interest and is, therefore, unconstitutional as violative of the Equal Protection Clause. See, e.g., San Antonio Independent School District v. Rodriguez, 411 U. S. 1 (93 SC 1278, 36 LE2d 16) (1973).

This argument is without merit. States have a legitimate interest in controlling the commercial distribution and exploitation of obscenity. Stanley v. Georgia, 394 U. S. 557 (89 SC 1243, 22 LE2d 542), (1969); Miller v. California, 413 U. S. 15, supra; Paris Adult Theater I v. Slaton, 413 U. S. 49 (93 SC 2628, 37 LE2d 446) (1973). Code Ann. § 26-2101 (e), which would provide a defense to a charge of distributing obscene material by persons who did so in a *non-commercial* manner, i.e., for education or medical reasons, is clearly within the ambit of the state's constitutional power to control the commercial dissemination of such material. Therefore, the fact that appellant, the publisher and editor of the eleven magazines at issue, is afforded no defense under the statute for his commercial distribution of the material, would not invalidate the state framework for controlling obscenity. Under present authorities, we conclude that Code Ann. § 26-2101 is immune from appellant's constitutional challenge. *Pierce v. State,* 239 Ga. 844 (239

SE2d 28) (1977).

*Judgment affirmed. Shulman, J., concurs. Deen, C. J., concurs specially.*

ARGUED OCTOBER 3, 1979 — DECIDED JANUARY 15, 1980 —
REHEARING DENIED JANUARY 30, 1980 — ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Herald P. Fahringer, Paul J. Cambria, Barbara D. Ebert, Robert G. Fierer, Ronald F. Johnson,* for appellant.
*Hinson McAuliffe, Solicitor, Leonard W. Rhodes, George Weaver, Assistant Solicitors,* for appellee.

DEEN, Chief Judge, concurring specially.

While I concur and agree with all that is said in Divisions 2, 3, 4, 5, 6, 7 and Sections I and II of Division 1 of the majority opinion, exception must be taken as to some of the conclusions contained in Section III of Division 1. Additionally, I would like to comment on the holding in Division 4.

## I.
### *Comparable Evidence*

The majority opinion in subsections (a), (b), (c) and (d) of Section III, of Division 1, concludes that the proffered evidence as to similarity and acceptance of alleged comparable evidence in determining contemporary community standards was insufficient. Thus we do not reach the question relating to the wisdom of adoption in Georgia for the first time of what is referred to as "the Womack Test." Further let me add:

(a) Personal polls or sexual surveys, if approved by the courts, may lead to perplex the jurors as do political polls confound and confuse the voters. In any event, judicial economy might dictate reasonable limitation in this area or else cases involving alleged sexually obscene materials may become inundated and saturated with conflicting sexual surveys.

(b) Permitting complete copies of the many sexually explicit books, "depictions or descriptions of intercourse, masturbation, bestiality, lesbianism and homosexuality," which are located in the local library, varied sex education materials and textbooks used in elementary, high schools

and universities submitted for required scrutiny to the trial judge so that the "taken as a whole" test considering "similarity" in determining admissibility could result in unmanageably complex and lengthy proceedings. "Trial economy" must be given serious consideration before adoption of the Womack Test. As an example, one of the most popular and widely used books by educators within curriculum guides throughout the state and nation, in elementary and high schools, is *Values Clarification,* a handbook of practical strategies for teachers and students written by Sidney Simon, Leland W. Howe and Howard Kirschenbaum, 1978, Hart Publishing Co., Inc., New York. This teaching methodology includes 79 strategies used on students. Among the many games of situation ethics of permissiveness include epitaph, obituary, death, suggestions to students to make decisions of fictional homicide and murder, suicide, abortion, euthanasia, sodomy and drugs, and student sexual survey and personal polls such as: "To whom would you tell. . . 3. You have had premarital sexual relations. . . 11. You have considered suicide. . . 13. You smoke marijuana. . . 23. Your method of birth control," pp. 186-187. "35. How do you feel about premarital sex? Virginal or wild-oats." P. 123. Forced-choice ladder questions such as identifying the student's sexual position. "4. Sex — a person who satisfies his/her sex needs without marriage." P. 110. Teachers are urged on page 22 to write for additional materials at: National Humanistic Education Center, 110 Spring Street, Saratoga Springs, New York 12866. What would trial judges do when confronted with materials and books of this type as meeting the test of "similarity"? What if they are confronted with arguments that these books meet the test of "acceptability" since they are used in the public schools of America as techniques in teacher training, curriculum development, and are a part of the curriculum? Flooding the courts with this type of possible comparable evidence would require considerable time of the trial judge deciding questions of admissibility.

(c) Assuming arguendo that "the Womack Test" is adopted would require substantial time of the court in reading and reviewing newspaper advertisements relating to alleged obscene movies. Even if this type

evidence is deemed to meet the "similar" test this does not necessarily point to acceptability in the community. It may only reflect the community standards of the editor of the newspaper and possibly a minority view of the ethics and standards within the community of those who enjoy pornography.

(d) The majority opinion has stated: "We have reviewed the 'comparable' magazines and find that they bear a 'reasonable resemblance' to appellant's so as to satisfy the Womack 'similarity' foundation." The trial judge has a wide discretion in determining similarity even if the Womack Test were adopted. "In this connection it is important to realize that 'slight' variations in format may well produce vastly different consequences in obscenity determinations." United States v. Womack, 509 F2d 368, 378. (U. S. C. A., D. C. (1974). "One of the most often attempted and most rarely successful methods of presenting evidence of contemporary community standards is the use of materials comparable to those on trial." Schauer, *The Law of Obscenity* (Washington, D. C.: Bureau of National Affairs, 1976), p. 133. Appellee's arguments in this area have considerable merit:

"*Secondly,* even if this Court refuses to require testimony of similarity a mere cursory examination of the comparables proffered by appellant and the magazines which were found obscene by the instant jury reveals their dissimilarity. Some of the comparables are more explicit — featuring more sex acts — than *Hustler* and *Chic,* whereas others are less explicit in terms of sex acts (e.g. *Penthouse* and *Oui* (TR — 770)). Even appellant admits that some of the comparables depict more explicit sex acts than the *Hustlers* or *Chics* involved in this case. (Appt. Br. — 20; TR-773, 802). But, in a manner unlike any of the proffered comparables, *Hustler* and *Chic* combine: (1) implicit and explicit acts of normal heterosexual intercourse (e.g. *Best of Hustler # 2* (State's Exhibit 1 (TR — 377)), pp. 50, 51); (2) scatology (e.g *Best of Hustler #2,* p. 127; Hustler, July 1977 (State's Exhibit 3 (TR — 377)), p. 15, 45; *Hustler,* August 1977 (State's Exhibit 4 (TR — 377)) pp. 64, 79, 110; *Hustler,* October 1977 (State's Exhibit 6 (TR — 377)), p. 87; *Chic,* October 1977 (State's Exhibit 7 (TR — 377)), p. 43; *Hustler,* December 1977 (State's Exhibit 9 (TR

— 377)), pp. 13, 30, 103; *Hustler,* January 1978 (State's Exhibit 10 (TR — 377)), pp. 22, 107); (3) bestiality (e.g. *Best of Hustler #2,* pp. 4 (woman and dog), 103 (woman and elephant); *Hustler,* June 1977 (State's Exhibit 2 (TR — 377)), pp. 18 (woman and cat), 22 (man and dead shark); *Hustler,* September 1977 (State's Exhibit 5 (TR — 377)), pp. 32 (woman and gorilla), 73); (4) morbidity and violence (e.g. *Best of Hustler # 2,* p. 86 (cutting off penises); *Hustler,* June 1977, pp. 41, 85; *Hustler,* July 1977, p. 20 (cutting out eyes); *Hustler,* August 1977, p. 94; *Hustler,* September 1977, p. 17; *Hustler,* October 1977, p. 51; *Hustler,* January 1978, pp. 13 (self-help abortion), 22); (5) inter-racial sex (e.g. *Best of Hustler # 2,* pp. 73f.); (6) sadism/masochism (e.g. *Best of Hustler # 2,* pp. 11f. (article on 'Fist Fucking'); *Hustler,* September 1977, pp. 35f.); (7) child seduction (e.g. *Best of Hustler # 2,* pp. 9, 105; *Hustler,* October 1977, p. 63; *Chic,* October 1977, p. 7; (8) lesbian sexual intercourse (e.g. *Hustler,* July 1977, pp. 29, 30, 43f.; *Chic,* January 1978 (State's Exhibit 11 (TR — 377)), pp. 61f.); (9) heterosexual fellatio and cunnilingus (e.g. *Best of Hustler # 2,* pp. 48, 76, 77; *Hustler,* January 1978, pp. 37f. (article on 'How to Eat Pussy'); *Chic,* January 1978, pp. 27f; (10) pandering advertisements (e.g. *Hustler,* June 1977, p. 98, *Chic,* November 1977 (State's Exhibit 8 (TR — 377), p. 2; *Hustler,* December 1977, p. 38; *Hustler,* January 1978, p. 16); and (11) in one magazine a scratch-and-sniff centerfold which, when scratched, is supposed to smell like a woman's vagina (*Hustler,* August 1977).

"Moreover, even if this Court finds one or two of the proffered comparables to be similar to the magazines found obscene, it should still affirm the trial court's exclusion inasmuch as the comparables were offered in 3 groups — those testified about by Myers (TR — 742), by Newhard (TR — 750, 759) and by McCoy (TR — 801). Unless all of the comparables in any one group was admissible the entire group was properly excluded. An offer of proof that contains both proper and improper evidence is properly excluded. *Culpepper v. Bower,* 203 Ga. 784 (1948)."

Another example of material in the alleged comparable is comments of humanistic evolutionary science fiction writer, Isaac Asimov, contained in *Genesis,* September 1977, "Lecherous Limericks," p. 43:

"A burglar from Asbury Park
Made, at college, his sexual mark.
Getting in the third story
Of the girl's dormitory
He was raped seven times in the dark."

The suggested comparables appear to be more animal and race-oriented than the magazines and the trial judge did not abuse his discretion in refusing to admit the other magazines distributed by Atlanta News Agency.

Furthermore this court should not hastily abandon the common sense doctrine in obscenity cases. I concur with what Judge Evans wrote in *Feldschneider v. State,* 127 Ga. App. 745, 746 (195 SE2d 184): "It is provided in Code § 38-102 that 'presumptive evidence consists of inferences drawn by human experience from the connection of cause and effect, and observations of human conduct.' Thus, jurors are entitled to use their own common sense as intelligent human beings on many questions. They most likely knew what 'contemporary community standards' are as regards the comic book in evidence, both in Clarke County and in other parts of the State of Georgia, and of the United States. Each of them doubtless had much knowledge of what is going on in this country through news media, radio, television, news-papers, etc. Shakespeare laid the scene of many of his plays in Italy, though he had never visited that country. Thomas E. Watson wrote 'The Story of France' which is highly regarded by the French people, though he never visited France. It is most likely that the jurors found this book, as I do, offensive, utterly without redeeming social value, published for the purpose of appealing to prurient interest in perversion and degeneracy, and an affront to the contemporary community standards of any community anywhere." Although the "utterly without redeeming social value" test has been altered, the common sense approach, as to determining contemporary community standards set forth in *Feldschneider,* supra, has not yet been overruled and may still be used in obscenity cases.

The jury may reject all expert opinion evidence and use their own common sense. ". . . [H]er knowledge would, and ought to, outweigh the opinion of a whole college of physicians, — because theirs is at last opinion — mere

opinion . . ." *City of Atlanta v. Champe,* 66 Ga. 659, 663 (1881).

## II.
### *Sufficiency of Evidence*

From an independent appellate review of the material the evidence is ample in deciding the fact of obscenity. In addition to explicit bestiality and other sexual expression obsessions are such random photography as: "More of Jacqueline Kennedy Onassis Nude" — "Butch and his Georgia peach — this pictorial of a black stud (and that is an understatement when you get an eyefull of his horsecock)" — "Farrah Fawcett nude? A special poster" — "Show me! This is the last word in photographically explicit sex manuals for children" — "Wife swapping on wheels" — A baby fetus with umbilical cord lying in a pool of blood with a mother scolding her daughter, "I'm really sick of picking up after you, Susan." — Editorials by Larry Flynt discussing sex and children stating: "Children are more interested in stuffed animals than in stuffed vaginas. . . The commission on obscenity and pornography determined that children are not affected by pornography simply because they are not interested in it."

Counsel for appellant argues in his brief: "The President's commission on obscenity has concluded that hard-core pornography does not cause an increase in sexual crime or alter the direction of sexual desires or seriously change any attitudes toward sex by the vulgarizing of sex life." Numerous cases could be catalogued providing scientific empirical evidence refuting the commission's conclusions. One of many examples is *Megar v. State,* 144 Ga. App. 564, 568 (241 SE2d 447 (1978), wherein porn photos exhibiting sexual sodomy were used as a blueprint to plan and execute a real crime of kidnapping and subsequent sexual sodomy.

Further, fictional mythological evolution is displayed in an article entitled "Chickens" — bodies of picked nude chickens with human heads in the grip of death — an article entitled "Child Abuse in America" written by humanistic fundamentalist theologian James W. Prescott, Ph.D., board member of the American

Humanist Association and an employee of the Child Health and Human Development of the U. S. Department of Health, Education and Welfare and author of "Abortion or the Unwanted Child: A Choice for the Humanistic Society" seems to recommend premarital and extramarital sex as a way to relieve pressure and tension, thus decreasing child abuse. He states: "Tension must be relieved, whether through the warm intimacy of sexual contact or through brutal acts of senseless violence." He then attacks Judeo-Christian traditional moral values in favor of his religious values of what might be labeled permissive humanism — homosexuality — hedonism and homicide. In the magazine he states: "We must educate Americans to accept physical pleasure and affection ... sexual information must flow freely ..." Dr. Prescott as well as many on the 1968 President's Commission on Pornography are active in the A. C. L. U. and in religious humanism. See *Siecus Circle A Humanist Revolution,* by Claire Chambers, Western Islands, Belmont, Mass. 02178, p. 28. Note *Pierce v. State,* 145 Ga. App. 680, 684 (244 SE2d 589); *Spillers v. State,* 145 Ga. App. 809, 810 (245 SE2d 54). Prescott, as do many libertarians who share his views, objects to anyone who injects his restrictive values on them, but are the first to demand the right to impose their religious morality of permissiveness on all others within the community — shades of Sodom and Gomorrah!

The judgment of the trial court must be affirmed.