60241. SHOWCASE CINEMAS, INC. et al. v. THE STATE.

McMURRAY, Presiding Judge.

On July 24, 1979, an investigator from the office of the Solicitor General of Fulton County personally observed and viewed two full length feature films and seven preview films of coming attractions at the Cine Showcase Theater, located at 1137 Peachtree Street, N.E., Atlanta, Fulton County, Georgia, after paying a fee of $5 to enter the theater. On July 25, 1979, he deposed as to the above facts in an affidavit, including the fact that the moving picture films he had observed showed male and female humans performing actual and explicit sexual intercourse, both normal and perverted, heterosexual

and homosexual (lesbianism), acts of sodomy such as cunnilingus and fellatio, rape, seduction, masturbation, both male and female, and various and sundry orgy scenes depicting rape, seduction, explicit acts of fellatio, cunnilingus and sexual intercourse involving both male and female humans. He obtained a search warrant for the seizure of the films, the same being two full length feature movies entitled "Little Orphan Dusty" and "Taxi Girls," as well as the seven preview films of coming attractions entitled "Two Sisters," "Heavenly Desire," "Candy Goes to Hollywood," "Fantasy World," "Count the Ways," "Sweet Savage," and "Babylon Pink."

A search warrant was issued, the films were then again observed after payment of the fee, and the various films were seized. By separate accusations the corporation (Showcase Cinemas, Inc.), engaged in the business of operating and owning a theater showing sexually explicit films and other entertainment for customers, as well as two other defendants (persons), were charged with the offenses of distributing obscene material, that is, in knowing the obscene nature thereof, did exhibit, did possess with intent to exhibit, cause to be exhibited and intentionally aid and abet, advise, hire, counsel and procure the exhibition to another person of the two alleged obscene feature films named above, as well as the seven alleged obscene preview films. The accusations were each in nine counts and alleged that the exhibition of said films was a commercial exploitation of erotica solely for the sake of their prurient appeal contrary to law.

Immediately prior to trial, a motion to suppress the evidence was made and denied, and a motion to dismiss, raising numerous constitutional questions, was also filed, heard, and denied. A motion to quash was then changed to a motion to merge with reference to the various counts and accusations, and upon stipulation of counsel same were merged into one "copious transaction." Testimony was then offered as to the purchase of the tickets from a ticket taker by the investigator and a detective; the observation by the investigator that the two defendants (persons) were in and about the theater including the projection booth, both during the showing of the films and the seizure thereof the next day when the movies were observed for the second time prior to seizure after again purchasing an admission ticket. The witness also testified as to the advertisements on the marquee of the "Showcase Cinema," "Cine Showcase," and the showing of "Triple X-rated movies."

Counsel stipulated that the movies shown to the jury and offered in evidence after identification were the films in question. In addition, a certified copy of the articles of incorporation and certificate of incorporation for Showcase Cinemas, Inc., was offered and received in evidence as well as a copy of a complaint for

declaratory relief filed in the United States District Court for the Northern District of Georgia by "Showcase Cinemas, Inc., d/b/a Cine Showcase," a Georgia corporation doing business at 1137 Peachtree Street, Atlanta, Georgia, against the officials of the City of Atlanta for a declaration of rights and injunctive relief. No objection was made to these documents with reference to the corporation although objection was made as to the relevancy of same as to the other defendants inasmuch as counsel were contending that no association had been shown between these defendants and the corporation.

The state offered in evidence as an expert witness a clinical psychologist who testified that she was familiar with the Georgia law against the distribution of obscene material and that after viewing the two feature films (not the previews) from her experience and education it was her opinion that the average adult person in Fulton County, applying the contemporary community standards of Fulton County would find these movies appealed to a shameful interest in sex and to a prurient interest. She also testified that these two motion pictures each depicted in a patently offensive way acts of sexual intercourse, masturbation and acts involving lewd exhibition of the genitals and that they each lacked serious scientific value. At the completion of the state's case, defendants moved for a directed verdict of acquittal as to the individual defendants (persons) inasmuch as the state has failed to prove scienter, that is, their knowledge of the obscene nature of the materials. This motion was denied.

The defendant corporation and one of the individual defendants did not call any witnesses. However, the other individual defendant offered in support of his defense (although it may be said that the testimony was pertinent to all the defendants) an expert witness in psychology, social theory and design and a graduate of numerous theological institutions and a teacher of sexology and sexual dysfunctioning, who likewise had observed the feature films as well as the preview films, all of which were in evidence. This witness testified that the films did not lack serious scientific value, were not frivolous, had therapeutic value, and that there was definite measurable, demonstrable help in the depiction of the sexual acts shown in these films and that they had serious scientific value in such fields as the teaching of sexology and sexual dysfunctioning.

At the completion of the trial following the charge, the jury returned a verdict against all the defendants as charged. Each of the individual defendants (persons) was sentenced to pay a fine of $4,000 and be confined for a term of 12 months, the confinement to be suspended upon payment of the fine and on condition the defendant not again violate the laws of Georgia. The corporation was sentenced

to pay a fine of $5,000 to be paid in 60 days. Each of the defendants filed a motion for new trial which was amended and after a hearing, denied. Defendants appeal. *Held:*

1. The first enumeration of error is concerned with the constitutional attack upon Code § 26-2101 (Ga. L. 1968, pp. 1249, 1302; 1971, p. 344; 1975, pp. 498, 501, entirely superseding the former Code section). The main thrust of the argument is that the constructive knowledge of the facts and circumstances surrounding the materials embodying sexual explicitness is a clear due process violation of an accused's rights under the constitutional obscenity law and "derogates the standard of obscenity liability to one of strict liability." Generally, constitutional attacks upon statutes come within the jurisdiction of the Supreme Court on review. However, after the Supreme Court has rendered and held a law of this state to be constitutional, other attacks thereon amount to mere application of adopted constitutional standards. Consequently, we proceed to rule on the constitutional attack since it appears that the constitutional attacks made here have previously been considered by the Supreme Court of Georgia. The obscenity law has been attacked on numerous occasions and has been held to be constitutional by our Supreme Court in such cases as *Sewell v. State,* 238 Ga. 495 (4) (233 SE2d 187); *Dyke v. State,* 232 Ga. 817 (I) (209 SE2d 166); and *Pierce v. State,* 239 Ga. 844 (239 SE2d 28). We have followed these decisions in such cases as *Wood v. State,* 144 Ga. App. 236, 237 (3) (240 SE2d 743); *Simpson v. State,* 144 Ga. App 657, 659 (4) (242 SE2d 265); *Dixie Books, Inc. v. State,* 147 Ga. App. 593, 594 (2) (249 SE2d 634); *Flynt v. State,* 153 Ga. App. 232, 246 (7) (264 SE2d 669); *Spry v. State,* 156 Ga. App. 74. While the constitutional attack here upon the obscenity law that the constructive knowledge as found therein is a violation of the constitutional requirements as to scienter may not have been specifically ruled upon by our Supreme Court, yet in *Sewell v. State,* 238 Ga. 495 (4), supra, a constitutional attack was raised upon the charge as to constructive knowledge as found in the statute as being in the exact language of the statute and there held to "not place a greater burden on appellant than 'knowledge of the materials he distributed,' " and same was found not to be meritorious. We deem the attack here to be controlled by the ruling of the Supreme Court in *Sewell v. State,* 238 Ga. 495 (4), supra, and other decisions by our Supreme Court holding that obscene material does not come within the protection of the First Amendment to the United States Constitution. There is no merit in this complaint.

2. The evidence showed that the individual defendants were employees of the corporate defendant "engaged in the business of operating, and owning, a theater showing sexually explicit films," and

worked at the theater where these obscene movies were shown, in and about the marquee, the projection booth and the entire theater. The sound track of the movies contained explicit language and other sounds that unmistakenly indicated the sexually explicit content of the films. Even if the defendants shut their eyes and did not observe the blatant exhibitions, the sound was sufficient to establish the issue of scienter to sustain their conviction. The circumstances warrant the inference that the employees were aware of what the films contained. See Smith v. California, 361 U. S. 147, 154 (80 SC 215, 4 LE2d 205); *Hays v. State,* 145 Ga. App. 65, 67 (243 SE2d 263).

After a careful review of the trial transcript, including a viewing of the films in question and the record, we find and so hold that a rational trier of fact, the jury here, properly found each of the defendants guilty beyond a reasonable doubt of the offenses charged. See Code Ann. § 26-2101, supra; Miller v. United States, 413 U. S. 15 (2), 24-25 (93 SC 2607, 37 LE2d 419); *Dixie Books, Inc. v. State,* 147 Ga. App. 593, supra; *Hess v. State,* 145 Ga. App. 685 (1) (244 SE2d 587); *Ball v. State,* 149 Ga. App. 270 (253 SE2d 886); *Flynt v. State,* 153 Ga. App. 232, 245 (4), supra; *Dyke v. State,* 232 Ga. 817, 821, supra; *Dobbs v. State,* 145 Ga. App. 14, 15 (3) (243 SE2d 275); *Allen v. State,* 144 Ga. App. 233, 235 (3) (240 SE2d 754). The enumerations of error complaining of the insufficiency of the evidence in the denial of a motion for directed verdict of acquittal are not meritorious.

3. The evidence showing that the theater was run for profit, that is, customers were charged an admission fee to observe the movies, the marquee advertised that triple-X movies were shown, amply authorized the charge of the court with reference to a finding as to a commercial exploitation of erotica. There is no doubt evidence of pandering to prurient interest in the creation, promotion or dissemination of material is relevant in determining whether the material is obscene. Splawn v. California, 431 U. S. 595, 598 (97 SC 1987, 52 LE2d 606); Hamling v. United States, 418 U. S. 87, 130 (94 SC 2887, 41 LE2d 590); Ginzburg v. United States, 383 U. S. 463, 470 (86 SC 942, 16 LE2d 31). There were sufficient circumstances of promotion and dissemination in evidence here for the trial court to charge and for the jury to find commercial exploitation of erotica. See *Hays v. State,* 145 Ga. App. 65, 66 (4), supra.

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED JULY 1, 1980 — DECIDED SEPTEMBER 9, 1980 — REHEARING DENIED OCTOBER 22, 1980 ▮

*Charles W. Boyle,* for appellants.

*Hinson McAuliffe, Solicitor, Leonard Rhodes, George Weaver, Assistant Solicitors,* for appellee.