No. 26.—BENJAMIN SALTER, plaintiff in error, *vs. Doe ex dem.* ELIZABETH WILLIAMS, defendant in error.

[1.] A *feme sole* having drawn land in the lottery, and married before the grant issues, the land does not belong to the husband by the marital right, and if it does not issue until after the death of the husband, the land belongs to the widow, and not to the representatives of the husband.

Salter *vs.* Williams.

[2.] It is not error in the Court to refuse to give in charge to the Jury, a principle of law which grows solely out of evidence which the Court has withdrawn from the Jury, because illegally admitted.

[3.] When plaintiff in ejectment has shown good title in himself, and the defendant relies on a paramount outstanding title, it is not error in the Court to instruct the Jury that he must show a clear and indisputable title in some body else.

[4.] It is competent for the Court to withdraw from the Jury the considera-tion of evidence which has been illegally admitted.

Ejectment, in Sumpter Superior Court. Tried before Judge Warren, May Term, 1851.

Upon the trial of this case, plaintiff introduced a grant from the State of Georgia, (dated in 1843,) to Elizabeth Williams, widow, of——district, Hancock County, Georgia; proved posses-sion in defendant, and closed.

Defendant offered in evidence the deposition of Eli Johnson, who swore, that he knew a lady formerly named Elizabeth Wil-liams, and that she drew the lot of land in dispute, as he knew, from having seen the plat and grant; she married a man by the name of Ingram; that Ingram is dead. They were married about 1832, and Ingram died in 1842; witness "had heard Mrs. Williams say, that she had made a deed of gift of this lot of land, to my (witness') children, and I have seen and read the deed of gift often." Ingram left no children by Mrs. Williams, but had children by a former wife; cannot say how many of them were alive at Ingram's death. Witness then stated the names of his children. The testimony here closed.

Counsel for defendant then requested the Court to charge,

1st. That if there were more than one Elizabeth Williams in existence, it was incumbent on plaintiff, alleging the same, to adduce proof of that fact.

2d. That land drawn by the wife, Elizabeth Williams, even though the grant was not issued, vested equitably in the husband, and that on the issuing of the grant, the legal title vested in the husband if living, and if dead, in his legal representatives.

3d. That if Elizabeth Williams, or Ingram, while *sole,* made

a deed of the land in question, to the children of Eli Johnson, or any one else, the title went out of her, and could not revest in her by a mere return or destruction of the deed.

All of which, the Court refused to charge, but charged as follows :

1st. That if the grant did not issue from the State of Georgia till after the death of Ingram, the title never vested in him, or his representatives, but still vested in his widow, formerly Mrs. Williams.

2d. That if the defendant relied on the outstanding title, he must show a clear and indisputable title in some one else than the plaintiff.

3d. That if the testimony of Johnson in relation to the deed had been objected to, he would have ruled it out as improper, the deed not being produced, nor its loss or destruction proved.

To which refusal to charge, and charge as given, defendant below excepted, and on these exceptions has assigned error.

SULLIVAN & HILL, for plaintiff in error.

DUDLEY, represented by McCAY, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

The first request of the counsel for plaintiff in error to charge, was correctly declined by the Court. He was desired to say to the Jury, that if there was more than one *Elizabeth Williams* in existence, it was incumbent on the plaintiff alleging the same, to prove it. This action was brought upon the demise of *Elizabeth Williams*. The defendant proved that she had intermarried before the suit was brought, with one *Ingram*. His idea is, that if plaintiff can recover after this proof, upon the demise of *Elizabeth Williams*, he must show that there was some other *Elizabeth Williams*, besides the one that married *Ingram*. What good would it do the plaintiff to show that in the wide world, there was another *Elizabeth Williams*, and stop at that ? Or what legal obligation was there upon him to prove it ? If he (the

plaintiff in error) had asked the Court to charge the Jury that the plaintiff could not recover until he showed a grant to *Elizabeth Williams*, not being the *Elizabeth Williams* that married *Ingram*, it would have been a different matter.

The great point in this case, is made in the second request. But the Court certifies that it has no recollection of being requested to charge as therein specified. We cannot, therefore, determine it. I will say, however, that upon a demise from *Elizabeth Williams*, after proof that she had intermarried before the suit was brought, although her husband died before the grant issued, there can be no rightful recovery. The demise should be in the name of *Ingram*, averring that the grantee, *Elizabeth Williams*, had intermarried with a man of that name.

[1.] The third request in the bill, and numbered 2d in the Reporter's brief, does not involve a sound legal position, as we think, and was properly declined. The interest which *Mrs. Williams* had in the land, as the drawer, the grant not having issued, was not such an interest as vested in her husband by the marital right, and if the grant did not issue during the coverture, upon his death it survived to *Mrs. Williams*. The legal estate was in the State, and the right of the drawer was an equitable ownership, in the nature of a chose in action, which could not vest in the husband until reduced into possession. He could not be seized of the legal estate until the grant issued, and if it did not issue until after the dissolution of the coverture by his death, both the equitable and legal estate united in the wife, to the exclusion of his representatives.

[2.] The 3d request states a sound position, but inasmuch as it sprang alone out of the testimony of Johnson, which was withdrawn from the Jury, there was nothing in the case which could warrant its being given in charge to them, and was for that reason, properly declined.

The exception to the first instruction in fact given, is not sustainable.

[3.] The Court charged, as we have herein held, in my remarks in reply to the 2d request of the plaintiff in error, to which I refer.

The Court farther instructed the Jury, that if defendant relied upon an outstanding title, he must show a clear and indisputable outstanding title in some one else than the plaintiff. This is also excepted to. It is true, that in ejectment the plaintiff relies upon the strength of his own title, and not upon the weakness of his adversary's. But if, as here, the plaintiff shows a good title —if he produces a grant and a chain of title to himself—and the defendant sets up another title outstanding, that title cannot defeat the plaintiff, unless it be clear and indisputable. In this, the Court did not err.

[4.] Finally, the Court instructed the Jury, that the evidence of Johnson in relation to the deed, was improperly admitted, and would have been ruled out had it been objected to, and this instruction is excepted to.

The evidence referred to, is this : " witness had heard *Mrs. Williams* say, that she had made a deed of gift of this lot of land to my (witness') children, and have seen and read the deed of gift often." This was illegal evidence. The sayings of the grantor are not evidence to prove the deed and its contents—it ought to have been produced, or its loss or destruction proven. Being illegal, it was competent to instruct the Jury to disregard it.

Let the judgment be affirmed.