## 54953. UNDERWOOD v. THE STATE.

WEBB, Judge.

Underwood was found guilty on two accusations of violation of Code Ann. § 26-2101 (distributing obscene materials), and from the convictions thereon, as well as the denial of his motions to dismiss, for separate trials, and to suppress evidence, he entered this appeal.

1. Error is charged to the trial court in overruling Underwood's motion to dismiss the two accusations on the ground that Code Ann. § 26-2101 is unconstitutional as

violative of the accused's rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution because the statute (a) is void for vagueness and violates due process; (b) is overbroad in having no cognizable standards for determining and regulating obscenity; (c) gives no authoritative legislative statement or judicial construction as to geographical area representing contemporary community standards; and (d) proscribes the possession of materials which are neither dangerous nor harmful per se and in which the state has no interest nor rational basis.

Georgia's obscenity statute has previously withstood similar attacks on its constitutionality, and there is no merit in enumerations of error 1 and 2. *Pierce v. State,* 239 Ga. 844 (239 SE2d 28) (1977); *Sewell v. State,* 238 Ga. 495 (1) (233 SE2d 187) (1977); *Dyke v. State,* 232 Ga. 817, 818 (I) (209 SE2d 166) (1974); *Robinson v. State,* 143 Ga. App. 37, 38 (2) (237 SE2d 436) (1977).

2. Underwood asserts as error number 3 that the due process rights under the Fourth and Fourteenth Amendments of the Constitution were violated by the trial court's denial of his motion for separate trials on the two accusations, and cites in support thereof *Dingler v. State,* 233 Ga. 462 (211 SE2d 752) (1975); *Wigley v. State,* 140 Ga. App. 145 (230 SE2d 108) (1976); *Buckles v. State,* 137 Ga. App. 802 (225 SE2d 61) (1976); and Code Ann. § 26-506.

In both *Wigley* and *Buckles,* this court, following *Dingler,* held that "[w]hen two or more crimes are charged in separate counts in a single indictment, though committed at different times and places and *involving transactions with different persons,* and are of the same general nature or species, and the mode of trial is the same, it is mandatory that the trial judge, upon motion of defendant, order separate trials for each of the crimes charged." (Emphasis supplied.) *Dingler v. State,* 134 Ga. App. 223, 224 (3) (214 SE2d 6) (1975).

Code Ann. § 26-506 (b) and (c) provides: "If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a

single prosecution except . . . the court in the interest of justice may order that one or more of such charges be tried separately." As the Supreme Court asserted in *Dingler v. State,* 233 Ga. 462, 463, supra, "Necessarily, then, severance in this particular kind of circumstance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique." See also *Coats v. State,* 234 Ga. 659, 662 (217 SE2d 260) (1975); *Padgett v. State,* 142 Ga. App. 139, 140 (235 SE2d 545) (1977).

Here the two offenses arose from the same conduct, occurred at the same place, involved the same persons, but occurred at different times. The evidence "was not of such complexity as to hinder the trier of fact in being able to distinguish the evidence and apply the law intelligently as to each offense." *Smith v. State,* 138 Ga. App. 226, 228 (2) (225 SE2d 744) (1976). We find no error in the denial of the accused's motion for separate trials on the two accusations against him.

3. For his fourth alleged error Underwood argues that the court erred in overruling his motion to suppress evidence which was seized without the aid of either a search warrant or an arrest warrant, in violation of his rights under the Fourth and Fourteenth Amendments.

The magazines, upon which the accusations are in part based, "Happy Humpers" and "Dreamy Sisters," were not seized but were purchased by the investigating officer. They clearly show to us, from our examination of them, repulsive as that was, that the officer had probable cause to arrest the accused for violation of the state's obscenity statute. *Wood v. State,* 144 Ga. App. 236 (1) (1977).

Testimony was offered to the effect that the devices seized were on display in plain view to anyone who walked into the store, that the store was a public place, that the investigator had a right to be where he could and did see them, that there was no unlawful search, that the devices seized were on display for sale and were marketed as useful primarily for the stimulation of human genital organs.

The devices included, among other items, dildos and artificial vaginas. They clearly came within the prohibition of Code Ann. § 26-2101(c) which provides:

"Additionally, any device designed or marketed as useful primarily for the stimulation of human genital organs is obscene material under this section." The seizure comes within the plain view doctrine. *Sewell v. State,* 238 Ga. 495 (2), supra; *Robinson v. State,* 143 Ga. App. 37, 40 (5), supra. The trial court did not err in overruling the motion to suppress.

4. The accused contends that the verdict was contrary to the evidence because it was not shown that he had knowledge of the obscene nature of the articles sold and seized. We must reject this contention. The evidence need not show that the appellant actually knew the devices were obscene. The applicable test under Code Ann. § 26-2101 is whether he has " 'knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material.' " *Dyke v. State,* 232 Ga. 817, 822 (209 SE2d 166) (1974). The store operated by the accused was complete with an array of so-called sex magazines, artificial sexual organs on display, and a massage parlor with a female operator available for services at the rate of $20 for 30 minutes or $35 for an hour.

5. Underwood enumerates as error number 6 that the physical evidence was not obscene as a matter of law. He argues that his expert witness, Dr. Ann McAlister, a clinical psychologist, testified that the individuals performing the sexual acts portrayed in the magazines sold by Underwood appeared to be enjoying themselves, the magazines offered sexual education, and did not depict sexual acts in a shameful or morbid fashion. Apparently the jury did not share her views, and they too had the benefit of their own visual observation of the evidence as well as the testimony of the "expert" and the state's witness. The jurors may have chosen to "use their own common sense as intelligent human beings. . ." *Feldschneider v. State,* 127 Ga. App. 745, 746 (195 SE2d 184) (1972). Our own viewing and examination of the physical evidence satisfies us that their depiction of sexual conduct, and the use of the devices, are patently offensive and obscene, and we approve the jury's obvious conclusion that the material entered into evidence is obscene.

6. There is no merit in Underwood's complaint that the court erred in admitting into evidence the sexual devices on the ground that there was insufficient legal foundation for the exhibits to be admitted. The state's witness testified that the exhibits were possessed by Underwood for the purpose of selling and distributing them, and the jury from their own observation could determine whether they were obscene under the definition set forth in Code Ann. § 26-2101 (c). Having viewed and examined the physical evidence, we agree with the jury.

7. Charged as errors 8 and 9 were the trial court's (1) admitting into evidence over Underwood's objection three sexually explicit magazines and (2) failure to declare a mistrial upon request when the trial court re-determined that the three magazines should not be admitted into evidence when they had already been shown to the jury by the state during closing arguments.

The three magazines, not alleged to have been sold by Underwood or to have been in his custody or control, showed human figures on the front and back covers in various stages of masturbation and apparent utilization of certain articles in aid of masturbatory acts. Underwood argues that these magazines, not having been acquired at the bookstore which he operated, were prejudicial and harmful because the jury had seen them, even though the trial judge excluded them from the evidence.

The state's witness had testified on direct examination that he gained his experience, knowledge and understanding with reference to the sexual devices by seeing movies and magazines that demonstrated and advertised the devices for sale for stimulating the sex organs, and that his knowledge and experience had been gained over a period of time as an investigator for Fulton County. On cross examination, in answer to the question from Underwood's counsel as to "where do you get the basis for your conclusion?" he replied, "From the magazines, that it advertised it for sale for the stimulation of your . . .," Underwood's counsel interrupted, "Have you brought any of these magazines with you *to show the advertisements in there?*" And later the accused's counsel prefaced another question

concerning the magazines with: "In the magazine articles that you *say you've seen but aren't here* . . ." Only then were the three magazines at issue brought into court, identified and tendered into evidence to corroborate the witness' testimony.

"[C]onsiderable latitude must be allowed in the admission of corroborative evidence. It is permissible to strengthen a witness's testimony by evidence of matters showing its consistency and reasonableness, and tending to indicate that the facts probably were as stated by the witness." *Aycock v. State,* 62 Ga. App. 812, 818 (6) (10 SE2d 84) (1940). Even though the magazines probably were admissible for corroborative purposes, the trial judge withdrew them from evidence, and recharged the jury as follows: "During the course of the trial the court admitted into evidence certain magazines for a limited purpose, and those magazines were discussed during the trial. You heard the testimony concerning those and the purpose for which they were introduced. I instruct you that when you go into the jury room to deliberate, you consider only the evidence in the magazines-that are in the jury room with you, and disregard any evidence which does not come out with you into the jury room. In other words, confine yourselves to the evidence that will be with you in the jury room and any testimony that you may have heard from the witness stand."

It is competent for the court to withdraw from the jury the consideration of evidence which it considers may have been illegally admitted. *Salter v. Williams,* 10 Ga. 186 (4) (1851). "An instruction to the jury to disregard evidence is tantamount to an exclusion." *Bowman v. Bowman,* 230 Ga. 395, 396 (1) (197 SE2d 372) (1973). "The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with." *Salmon v. Salmon,* 223 Ga. 129 (1) (153 SE2d 719) (1967).

Even if it may be said that the admission into evidence of the three magazines was error in the first place, and we do not so hold, the subsequent withdrawal of them and the explicit instruction to the jury to consider

"only the evidence in the magazines that are in the jury room with you" (these magazines not having gone to the jury room) rendered such error harmless. A mistrial was not essential to the preservation of the right to a fair trial, and we will not interfere with the trial judge's discretion in denying the motion therefor.

· *Judgment affirmed. Quillian, P. J., and McMurray, J., concur.*

SUBMITTED JANUARY 10, 1978 — DECIDED
FEBRUARY 3, 1978.

*Hinson McAuliffe, Solicitor, Leonard W. Rhodes, Assistant Solicitor,* for appellee.