A06A1187. NEWTON v. THE STATE.
(636 SE2d 728)

MIKELL, Judge.

After a jury trial, Daniel Allen Newton was convicted of three counts of aggravated child molestation, one count of child molestation, and one count of incest. He was acquitted of electronically furnishing obscene material to a minor. Newton was sentenced to 20 years with 12 to serve to run concurrently on each count and ordered to pay $12,000 in restitution. Without challenging the sufficiency of the evidence, Newton argues that his convictions should be reversed because the trial court denied his motion for new trial and motion in limine and erroneously imposed restitution as a part of his sentence. We affirm Newton's convictions, but reverse that portion of the sentence imposing restitution as a condition of probation and remand for further proceedings.

Viewed most favorably to support the verdict, the record shows that the victim, Newton's 14-year-old biological daughter, K. N., testified that she moved in with Newton and his wife, Angie, in 2001, and he began touching her inappropriately during the fall of that year. In January of the following year, she and her father moved to another apartment. While living there, Newton engaged in sexual intercourse with K. N., penetrating her vagina with his penis approximately six or seven times. K. N. also recalled incidents of oral sex, with her father putting his penis in her mouth once and his mouth on her vagina twice, and that he penetrated her anally with his penis twice. K. N. further testified that on February 21, after having vaginal and anal sex with her father on a sheet on the couch in the living room, he used a towel to clean up after ejaculating. On the next day, she reported the molestation to her school counselor.

Detective Kyle Burkett of the Gordon County Sheriff's Office interviewed K. N. on February 25. He obtained a search warrant and recovered several items that K. N. mentioned during the interview, including two towels from Newton's bedroom and a sheet from the living room. Georgia Bureau of Investigation forensic biologist Jennifer Johnson testified that she found human semen on the towels and the sheet and her supervisor, Connie Pickens, testified that the stains on the sheet and towels contained Newton's DNA profile. Deborah Lee, a sexual assault nurse examiner, testified that she performed a physical examination on K. N. and found abnormal abrasions and lacerations on the outside of her vagina and swelling and redness in K. N.'s anal area and on the inside of her vagina, all of which were consistent with at least partial penetration.

Newton testified that he never had sexual intercourse of any type with K. N.; that his semen was on the towels and the sheet because he had sex with his wife; that he did not ejaculate inside his wife

because she had infections; and that he knew nothing about the redness and swelling found during K. N.'s pelvic exam. On cross-examination, when asked about how K. N. knew about the presence of his semen on the towels and sheet, Newton testified that he told her that he and his wife used a towel during sex without telling her that he ejaculated on the towel, but he did not know how she knew about the sheet. Angie Newton testified that while she and Newton were separated, she would visit his apartment at least twice a week and would stay overnight and she and Newton would sleep on the couch or on K. N.'s bed, as it was the only bed in the apartment. Although not raised as an issue on appeal, we find that the evidence supported Newton's conviction.

1. In his first two related enumerated errors, Newton argues that the trial court committed reversible error when it denied his motion for a mistrial after the bailiff engaged in improper conversation and contact with the jury and when it denied his motion for a new trial on the ground that the bailiff's conduct violated his right to a fair and impartial trial. In reviewing the denial of a motion in limine, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment[1] and cannot reverse a trial court's ruling absent an abuse of discretion.[2] The abuse of discretion standard also governs our review of the trial court's denial of a motion for new trial.[3] In this case, we find no such abuse.

The record shows that after the close of the evidence as the jury departed the courtroom, one of the jurors asked the bailiff to view the videotape of K. N.'s interview with Detective Burkett. The bailiff testified:

> And I told them at this time I didn't think they could see it, I said, but I'll bring it before you [the judge] and the lawyers. I said probably the best thing to do is wait until you hear all the charges and closing arguments and then start deliberating. And then if you want — if all twelve of you can't remember things, then maybe ask to see it then.

Newton moved for a mistrial on the grounds that the bailiff's comments constituted a jury instruction. The trial court admonished the bailiff but concluded that no error had occurred nor harm to the defendant.

---

[1] *Berry v. State*, 274 Ga. App. 831, 833 (2) (619 SE2d 339) (2005).

[2] *Tuggle v. State*, 211 Ga. App. 854, 855 (2) (a) (440 SE2d 740) (1994).

[3] *Mondy v. State*, 229 Ga. App. 311, 312 (1) (494 SE2d 176) (1997).

"As a general rule, a bailiff's improper communication with jurors is presumed to be prejudicial,"[4] but this presumption may be rebutted.[5] In the instant case, the bailiff reported the incident to the attorneys, who in turn reported it to the court immediately. The bailiff was questioned by the trial judge on the record, who determined that although the communication was improper, no harm or prejudice to the defendant occurred.

In the order denying Newton's motion for a new trial, the trial judge expressly stated the findings upon which he relied in concluding that Newton was not prejudiced, stating:

> First, the court notes that this occurred before argument and charge, and before deliberation had begun. Second, whether or not a replaying of the video would be allowed at all was a matter in the court's discretion. Third, after considering the evidence of the bailiff and argument of counsel the court determined that nothing prejudicial to the defendant had occurred. Fourth, there was no request for the court to bring the jury in and charge them on this issue or to mention it in its general charge. Fifth, the motion for mistrial was not re-urged after the court had dealt with the issue in this manner.

The transcript of the hearing on the motion for new trial is not included in the record. In the absence thereof, "we must assume as a matter of law that the evidence adduced at the hearing supported the trial court's findings."[6] Based upon those findings, it appears that the state adequately rebutted the presumption of harm caused by the improper communication.[7]

In support of his argument, Newton relies heavily on *Turpin v. Todd*[8] and *Morris v. State*,[9] both of which are factually distinguishable from the instant case. In *Turpin*,[10] a habeas corpus proceeding,

---

[4] *Lawson v. State*, 280 Ga. App. 870 (1) (635 SE2d 259) (2006), citing *Mercer v. State*, 169 Ga. App. 723, 728 (6) (314 SE2d 729) (1984).

[5] *Lawson*, supra (no error where statement brought to trial judge's attention immediately, who instructed the jury, and no evidence suggested that jurors were influenced by improper communication).

[6] (Citations and punctuation omitted.) *Cwiek v. State*, 220 Ga. App. 36 (1) (467 SE2d 608) (1996).

[7] Compare *Mercer*, supra at 729 (6) (conviction reversed where defense counsel was informed of improper communication between bailiff and juror after the publishing of the verdict, and "the state did absolutely nothing to rebut by proof the presumed harm").

[8] 271 Ga. 386 (519 SE2d 678) (1999).

[9] 257 Ga. 781 (364 SE2d 571) (1988).

[10] Supra.

our Supreme Court concluded that the evidence supported the habeas court's findings that the jury foreman gave the bailiff a written question to ask the judge about a life sentence and the possibility of parole, which the bailiff never presented to the judge; that the jury spent almost half of their sentencing deliberations discussing the possibility of parole, which the bailiff's answer encouraged; and that the defendant was actually prejudiced by the bailiff's conduct.[11] The court concluded that the error was not harmless because the communication materially affected the outcome of the case.[12] Similarly in *Morris*,[13] at a post-trial hearing, there was testimony that the jury asked to see an item of evidence, and the bailiff replied, "I don't know, I'll see, but I don't think it was entered as evidence," then never posed the question to the judge.[14] Additionally, the bailiff misled the jurors when answering their question about whether they could read testimony from the trial transcript.[15] The court reversed, holding that in light of this error, along with other errors committed in the trial,[16] it could not say that it was highly improbable that the errors contributed to the verdict.[17] Unlike in the instant case, the evidence in *Turpin*[18] and *Morris*[19] regarding the improper communication between the juror and the bailiff came to light after the verdict and affected the outcome of the case. Therefore, these cases do not warrant the reversal of Newton's convictions.

2. Newton next argues that the trial court erred when it failed to exclude from evidence K. N.'s videotaped interview and failed to conduct a hearing on K. N.'s hearsay statements made therein pursuant to *Gregg v. State*.[20] The thrust of Newton's argument is that the trial court never made a determination as to the reliability of K. N.'s statement. "The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion."[21]

---

[11] Id. at 388-389.

[12] Id. at 391.

[13] Supra.

[14] (Punctuation omitted.) Id. at 783.

[15] Id.

[16] The trial court denied the defendant an opportunity to cross-examine a witness when it had specifically ruled earlier that such examination could occur. Id. at 784 (3).

[17] Id. at 784 (4).

[18] Supra.

[19] Supra.

[20] 201 Ga. App. 238 (411 SE2d 65) (1991).

[21] (Punctuation and footnotes omitted.) *Conley v. State*, 257 Ga. App. 563, 564 (2) (571 SE2d 554) (2002).

After K. N.'s testimony, Newton moved to exclude the playing of her videotaped interview on the grounds that the testimony in the videotape was inconsistent with her in-court testimony, relying on *Gregg*.[22] In *Gregg*, however, we held that "OCGA § 24-3-16 does not require a hearing to determine 'indicia of reliability' be held prior to receiving the testimony."[23] Additionally, "[t]he trial court need not make an *express* finding that the circumstances of the statement at issue provide sufficient indicia of reliability before admitting the statement, 'as this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding.'"[24] Consequently, "error, if any, resulting from a previous denial of the motion in limine is rendered harmless."[25] Also in *Gregg*, we listed some of the factors a court may consider when determining whether an out-of-court statement has sufficient indicia of reliability, which include, but are not limited to the following:

(1) the atmosphere and circumstances under which the statement *was made* (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.[26]

---

[22] Supra.

[23] (Citation and punctuation omitted.) Id. at 239 (3) (a). Accord *Frazier v. State*, 278 Ga. App. 685, 688 (1) (b) (629 SE2d 568) (2006). OCGA § 24-3-16 provides that
[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

[24] (Citation and footnote omitted; emphasis supplied.) *Frazier*, supra, citing *Gregg*, supra at 239 (3) (a).

[25] *Gregg*, supra.

[26] (Citations omitted; emphasis in original.) Id. at 240 (3) (b).

We noted, however, that the factors are not to be mechanically applied but considered in a manner best calculated to facilitate the determination of the required degree of trustworthiness.[27]

Applying these factors herein, the record shows that K. N. was 12 years old at the time of the interview. She was interviewed by Detective Burkett, an experienced officer, in his office, outside of the presence of her mother so as to avoid any undue influence. Burkett testified that K. N. did not appear to be under the influence; that she did appear to be very tired; that she never refused to speak with him; and that he did not have to coach, lead, or pressure her to tell what happened. Additionally, no threats or promises were made to K. N. to induce her to talk. Moreover, K. N. testified as a witness at trial and was subject to cross-examination, giving Newton every opportunity to examine and cross-examine her before the jury regarding the circumstances surrounding the videotaped interview and any inconsistencies he alleged existed therein, and giving the jury an opportunity to judge her demeanor and credibility during that examination. "This provided an additional safeguard to [Newton's] right of fair trial and provided [Newton] full opportunity for confrontation."[28] Accordingly, we cannot say that the trial court abused its discretion when it admitted the videotape.

3. Newton argues that the trial court should have excluded from evidence a Playboy magazine because K. N. testified that Newton did not show her the magazine or talk to her about it although she heard Newton and his wife talk about the magazine. Newton maintains that the evidence was introduced to show his lustful disposition, a purpose prohibited by *Simpson v. State*[29] and *Frazier v. State*.[30] In *Simpson*,[31] our Supreme Court disapproved the practice of admitting sexually explicit material to show a defendant's lustful disposition in sexual offense cases, setting forth the clear and cogent rule that:

> [i]n a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a

---

[27] Id.

[28] (Footnote omitted.) *Conley*, supra at 565 (2).

[29] 271 Ga. 772 (523 SE2d 320) (1999).

[30] 241 Ga. App. 125 (524 SE2d 768) (1999).

[31] Supra.

defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.[32]

Applying *Simpson*, we reversed a conviction in *Frazier*[33] where the state introduced evidence showing the defendant's lustful disposition, which evidence could not be linked to the crime charged, and the trial court instructed the jury that the evidence could be used for that purpose.[34]

The state argues that these cases are distinguishable from the instant case because here, the evidence was not admitted for the prohibited purpose discussed above but to corroborate K. N.'s testimony about the crime, relying on *Underwood v. State*,[35] wherein we stated that sexually explicit magazines were admissible to corroborate testimony. However, *Underwood*[36] preceded *Simpson*,[37] which we believe controls here. Because the state did not link the Playboy magazine to the crime charged, the trial court erred when it admitted it. Nonetheless, we find that this error does not warrant reversal because of the overwhelming evidence of Newton's guilt.

In *Frazier*,[38] the state offered no physical evidence that the defendant committed the crime and the defendant offered two alibi witnesses and testified that he did not commit the charged acts.[39] We stated that under those circumstances, as a matter of law, the harmless error standard or overwhelming evidence analysis could not be applied because "the jury was required to decide between the credibility of the [s]tate's inculpatory evidence and the credibility of [the defendant]'s exculpatory testimony."[40] In the instant case, however, although Newton testified, the state offered physical and medical evidence that the molestation occurred in addition to the victim's testimony. Additionally, unlike in *Frazier*,[41] the trial court appropriately charged the jury on this issue as follows:

---

[32] Id. at 774 (1).

[33] Supra, 241 Ga. App. 125.

[34] Id. at 125-126 (1).

[35] 144 Ga. App. 684, 689 (7) (242 SE2d 339) (1978).

[36] Id.

[37] Supra.

[38] Supra, 241 Ga. App. 125.

[39] Id. at 127 (1).

[40] (Citation and punctuation omitted.) Id. See also *McDonald v. State*, 249 Ga. App. 1, 2-3 (1) (548 SE2d 361) (2001) (harmless error standard inapplicable where no physical evidence was offered and defendant testified that he did not commit the acts charged); *White v. State*, 213 Ga. App. 429, 431 (1) (445 SE2d 309) (1994) (same).

[41] Supra, 241 Ga. App. 125.

Often during the course of a trial evidence is admitted for a limited purpose. During the course of this case, certain evidence was admitted that was discovered during the execution of a search warrant at Woodcrest Circle, apartment 38. That evidence included certain magazines and medications found in the apartment. The items found in the apartment have been admitted for the purpose of corroborating, if it does, the testimony given by the victim, [K. N.]. Evidence of the magazines and the medication is not proof of any lustful disposition on the part of the Defendant, and the jury should not consider those items as evidence of proof of any lustful disposition. What weight you give this evidence, as it may corroborate the victim's testimony, is a matter solely for you, the jury, to decide.

Newton did not object to this charge. Therefore, any error caused by the admission of the magazine was harmless in light of the trial court's limiting instruction to the jury and the overwhelming evidence of Newton's guilt.[42]

4. In his last enumerated error, Newton argues that the trial court could not impose restitution without holding a hearing and making certain findings of fact as required by OCGA § 17-14-10.[43] We agree.

Before ordering restitution, a trial court must hold a hearing to determine whether restitution is appropriate and, if so, the amount that should be paid. OCGA § 17-14-10 requires that the trial court consider several factors in making this determination, including the offender's present financial status, the offender's probable future earning capacity, the goals of the restitution order, and the amount of damages suffered by the victim. Following the restitution hearing, "the court must make written findings of fact relating to each of the factors set forth in OCGA § 17-14-10."[44]

However, "a defendant who does not agree to the amount of restitution ordered by the trial court is normally required to contest the

---

[42] See *Phillips v. State*, 269 Ga. App. 619, 627 (5) (b) (604 SE2d 520) (2004) (error in admitting pornography that was not linked to crimes charged was harmless in light of overwhelming evidence against defendant); *Lunsford v. State*, 260 Ga. App. 818, 823 (4) (581 SE2d 638) (2003) (same).

[43] OCGA § 17-14-10 sets forth the factors that must be considered when ordering restitution.

[44] (Citation and footnote omitted.) *Lummus v. State*, 274 Ga. App. 636, 638 (3) (618 SE2d 692) (2005).

issue at the time the condition is imposed[,]"[45] which Newton did not do. Nonetheless, because the record does not disclose what the trial court found as fact or that it considered the statutory factors at all, we must remand the case and instruct the trial court to prepare written findings of fact concerning the factors in OCGA § 17-14-10 and to hold a hearing concerning the same.[46]

*Judgment affirmed in part and reversed in part, and case remanded with direction. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 13, 2006 — 

*Cox Byington, Christopher P. Twyman*, for appellant.
*T. Joseph Campbell, District Attorney, Erik J. Pirozzi, Assistant District Attorney*, for appellee.

---

[45] (Citation and punctuation omitted.) *Williams v. State*, 180 Ga. App. 854, 856 (3) (a) (350 SE2d 837) (1986).

[46] *Garrett v. State*, 175 Ga. App. 400, 403 (1) (333 SE2d 432) (1985).

